The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: April 9 2015

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-33195 |
| | ) | |
| David A. Adamski and | ) | Chapter 7 |
| Angel M. Adamski, | ) | |
| | ) | |
| Debtors. | ) | JUDGE JOHN P. GUSTAFSON |

**MEMORANDUM OF DECISION RE MOTION TO DISMISS**

This case comes before the court on the United States Trustee's ("the UST") amended motion to dismiss Debtors David A. Adamski and Angel M. Adamski's ("Debtors") Chapter 7 case ("Motion") for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 29] and Debtors' response ("Response") [Doc. #33]. The court held a hearing on the Motion that Debtor Angel Adamski, Debtors' counsel, Counsel for the UST, and John Weaver, bankruptcy analyst for the UST, attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the motion, the response and arguments of counsel and having reviewed the

record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtors' Chapter 7 case unless they convert the case to Chapter 13.

## BACKGROUND

Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 29, 2014, stating that their debts are primarily consumer debts. [UST Ex. A]. Debtors' Schedule D shows total secured debt in the amount of $97,760.00. Debtors' secured debts include $73,760.00 secured by a mortgage on their home, which they value at $85,000.00, and $24,000.00 secured by a lien on the title of a 2014 Dodge Journey, which they value at $23,000.00 [*Id.*]. Debtors have stated an intention to reaffirm the debts on both the home and the motor vehicle, and reaffirmation agreements have been entered into and filed with the court in this case.

Debtors' bankruptcy schedules do not show any unsecured priority debt. [*Id.*] Debtors' Schedule F shows unsecured nonpriority debts in the amount of $108,408.62, which consists of student loan debt in the amount of $37,500, a deficiency on a foreclosed home in the amount of $63,150.72, and credit card debt in the amount of $7,757.90. [UST Ex. E]. A payment for student loan debt shown on Debtor's Schedule J totals $685.00/month. Debtor's Statement of Financial Affairs shows two creditor lawsuits, one of which resulted in a judgment lien on Debtors' home located at 308 Jennings St., Rossford, OH, 43460, and the other which resulted in the repossession of Debtors' property located at 2002 Marlow, Toledo, OH, 43613. [UST Ex. A at pp. 26-27].

Debtor Angel M. Adamski is the Treasurer for Northwood Local Schools and has been employed by the school district for five (5) years. Debtor David A. Adamski is a custodian at St. Rose Parish in Perrysburgh, OH and had been employed by the church for ten (10) months at the time their petition was filed. Debtor's Statement of Financial Affairs shows that Debtors had a 2012 joint income of $71,186.00 [UST Ex. A at p. 25], and Debtors' federal tax return certifies that Debtors' received an adjusted gross income of $81,862.00 in 2013. [Doc. # 5].

Debtors' current Schedule I, [UST Ex. E, Schedule I], shows monthly income of Debtor Angel M. Adamski, less payroll deductions for taxes and Social Security, insurance, life insurance, and an American Fidelity Section 125 Plan totaling $4,746.99, and monthly income of Debtor David A. Adamski, less deductions for taxes and social security, in the amount of $1,026.75, for total monthly net income of $5,773.74.

According to Schedule J and Debtor Angel M. Adamski's testimony at the hearing, Debtors are

married and have two children listed as dependants, two sons, ages 4 and 10 months, respectively. [UST Ex. A, Schedule J]. Debtors' current Schedule J shows total monthly expenses of $6,174.36. Those expenses include a mortgage payment of $685.50, although the Reaffirmation Agreement filed with the court shows that the mortgage payment will be $675.80 under the reaffirmed terms. Schedule J monthly expenses also include home maintenance in the amount of $150, $830 in utilities (including $430 for telephone, cell phone, internet, satellite, and cable services), transportation in the amount of $600, charitable contributions in the amount of $100, $685 in student loan payments, and $200 for a personal loan on a timeshare that Schedule J lists as "not in debtor's name." [*Id.*]. Debtor Angel M. Adamski testified at the hearing that the timeshare loan is not in their names, but their names are on the deed.

Debtors' Form B22A calculating the means test shows the family's annualized current monthly income at the time of filing this case was $91,619.40, which is above the average median income of a family of 4 in Ohio. [UST Ex F, p. 3]. Debtors are thus above median income debtors under § 707(b). However, after applying the statutory calculation of deductions from income, the UST does not assert a presumption of abuse under 11 U.S.C. § 707(b)(2). Although the UST filed a motion to dismiss for abuse under §707(b)(2) and (b)(3), he is now proceeding only under § 707(b)(3).

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test

3

from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). As the movant, the UST carries the overall burden of demonstrating, by a preponderance of the evidence, that Debtors' case should be dismissed. *In re Weixel,* 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

In this case, the UST does not argue that Debtors filed their petition in bad faith but instead contends that the totality of Debtors' financial circumstances demonstrates that they are not needy and that granting them a discharge would be an abuse of the provisions of Chapter 7. The totality of the circumstances test allows the court to consider both prepetition and postpetition circumstances. *See U.S. Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir. 2006) ("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief,* which suggests that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted."); *In re Mestemaker,* 359 B.R. 849, 855-56 (Bankr. N.D. Ohio 2007).

Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

Debtors' schedules show that they are eligible to be a debtor under Chapter 13. Their secured and unsecured debts are less than the Chapter 13 debt limits. *See*, 11 U.S.C. § 109(e). They also have regular income. Although David A. Adamski has worked as a custodian at St. Rose Parish for only ten (10) months as of the time of the filing, his income is roughly 17% of the Debtors' combined gross income. Angel M. Adamski has stable income and has been employed by the same employer for five (5) years as of the filing date. *See,* 11 U.S.C. § 101(30). As above median income Debtors, the applicable commitment period for any Chapter 13 plan they proposed would be five years. 11U.S.C. § 1325(b)(4)(A)(ii).

Under § 707(b)(3), the UST argues that Debtors have sufficient disposable income to repay a portion of their unsecured debts out of future earnings, in a Chapter 13 plan or otherwise. The UST argues that an

4

STRS deduction of $1,483.00 originally listed on Schedule I is improper and should be treated as income available to fund a Chapter 13 plan that provides for a ratable distribution of these funds among all creditors. Additionally, the UST focuses on several expenditures on Debtors' Schedule J. Specifically, the UST takes issue with $830/month spent on utilities, $605/month in payments on student loans and $200/month spent on a personal loan on a timeshare. Finally, the UST argues that $600/month on transportation expenses is excessive, due to Debtor's testimony at the evidentiary hearing that she works approximately five (5) miles away from her home. In summary, the UST is arguing that "belt-tightening" with regards to Debtors' Schedule J expenses, the removal of the improperly-deducted STRS amount from Schedule I, in addition to the removal of student loan payments and the timeshare payment, would free-up additional disposable income that could be used to fund a Chapter 13 plan to repay Debtors' unsecured creditors. The court agrees.

The original Schedules I and J showed a monthly net income of -$1,803.94. [Doc. # 1, Schedules I, J]. In Debtors' Amended Schedules I and J, filed with the court on October 17, 2014 and included in UST's Exhibits as Exhibit E, a net monthly income of -$400.62 is listed. This net income number reflects Debtors removing the $1,483.32 deduction from Schedule I for Debtor Angel M. Adamski's STRS contribution, which was deducted as an expense, but not included in gross income. Debtors' current Schedules I and J [Petitioner's Ex. A, Schedules I, J], before any adjustments (to the amounts listed for utilities, student loans, a timeshare loan, and transportation) are made, show a monthly net income of negative $900.62. The $500 difference between Debtors' Amended Schedules and their current Schedules is due to an increase of $500 in Debtors' childcare costs post-petition.

With respect to Debtors' student loan expenses listed on Schedule J, the court agrees that the $685.00 budgeted to pay their student loan expenses should be applied to a ratable distribution among all of Debtors' unsecured creditors. This district has previously held that the nondischargeability of a student loan is not, without more, a basis to permit Debtors to treat the student loan creditors more favorably than other unsecured creditors. *In re Rooney*, 436 B.R. 454, 459 (Bankr. N.D. Ohio 2010) (explaining that "to treat certain unsecured creditors more favorably simply because they hold a nondischargeable claim would elevate such claims to priority status that was not intended by Congress".); *See also, In re Robinson*, No. 14-32889, 2015 WL 1087316, at *3(Bankr. N.D. Ohio March 9, 2015); *In re Lang*, No. 07-31744, 2007 WL 2777770, at *3 (Bankr. N.D. Ohio Sept. 24, 2007); *In re Kaminski*, 387 B.R. 190, 197 (Bankr. N.D. Ohio 2008). Removing the $685.00 from Debtors' expenditures results in a monthly net income of -$215.62.

In this case, the cost of a "timeshare" is neither necessary to be expended for the support of the Debtors, nor is it reasonable. Although Debtor testified at the evidentiary hearing that the timeshare is not in Debtors' name, either David A. Adamski or Angel M. Adamski's name (or names) are apparently on the deed, and they are continuing to make the $200 monthly payment. When this payment is removed from Debtors' Schedule J, Debtors' monthly net income is -$15.62.

Debtors received an income tax refund of $4,288.00 for the 2013 tax year, when their total income for the same tax year was $84,280.00. [Petitoner's Ex. E, 2013 U.S. Tax Return]. As of their filing date, Angel M. Adamski had a year-to-date income of $41,935.38, and David A. Adamski had a year-to-date income of $9,038.25. Based upon a review of Debtors' pay advices [UST Exs. B, C], for David A. Adamski's pay for the period May 2, 2014 through September 30, 2014, and for Angel M. Adamski's pay for the period March 31, 2014 through September 15, 2014, it appears that Debtors will receive the same or a slightly higher total income for the tax year 2014. With similar, or greater, deductions Debtors should receive a similar tax refund for the 2014 tax year.

Although not available on a monthly basis, because income tax refunds arise as the result of the taxpayers' overpayment of their tax liability or over-withholding[1] from wages, tax refunds are a source of income for a debtor and are included in a determination of Debtors' ability to pay unsecured creditors. *In re Jacob*, 447 B.R. 535, 543 (Bankr. N.D. Ohio 2010); *In re Edighoffer*, 375 B.R. 789, 797 (Bankr. N.D. Ohio 2007); *In re Fox*, No. 13-12566-RAG, 2014 WL 6066120, at *7, 2014 Bankr. LEXIS 4695, at *20 (Bankr. D. Md. Nov. 12, 2014) (citing cases). A refund of roughly $4,200.00 equates to approximately $350 per month of over-withholding that could be used to pay creditors. When this figure is added to Debtors' Schedules, their monthly net income rises to $335.00/month.

Moreover, the UST claims, and the court agrees to some extent, that Debtors have the ability to create additional monthly net income by means of belt-tightening. [Doc. # 28]. The court believes that Debtors' expenses could be reduced without depriving them or their dependents of adequate food, clothing,

---

[1]/ The same rule applies for purposes of the Means Test presumption under Section 707(b)(1) and (2). The text for Line 25 of the former Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (Official Form 22A) specifically directed debtors to enter the total average monthly expense actually incurred for all federal, state and local taxes, other than real estate and sales taxes. The proper deduction is not necessarily the amounts withheld, if that level of withholding had previously resulted in tax refunds. *In re Urban*, 432 B.R. 302, 305 (Bankr. Wyo. 2010); *In re Robrock*, 430 B.R. 197, 208-209 (Bankr. D. Minn. 2010); *In re Meade*, 420 B.R. 291, 310-311 (Bankr. W.D. Va. 2009); *In re Lipford*, 397 B.R. 320, 332-335 (Bankr. M.D. N.C. 2008); *In re Bernard*, 397 B.R. 605, 608-610 (Bankr. D. Mass. 2008); *In re Hale*, 2007 Bankr. LEXIS 3516 (Bankr. N.D. Ohio October 10, 2007). Line 16 of the new Means Test form, Official Form 22-1, provides even more explicit directions on the proper method for deducting over-withholding for taxes that generates tax refunds.

shelter or other necessities such that a meaningful payment to creditors can be made. Specifically, the court finds Debtors' monthly allocation of $830.00 to utilities, including $430.00 for telephone, cell phone, internet, satellite, and cable services, to be excessive. The court also believes that Debtors' transportation expense of $600 can be trimmed to some extent, based on testimony at the hearing and the distance both Debtors travel for work. Specifically, Debtor Angel M. Adamski testified that she typically travels less than five (5) miles to work each way, and based upon the information contained in the petition [Doc. # 1], David A. Adamski travels a similarly short distance to and from work. "[W]hile bankruptcy relief is not conditioned upon a debtor living in poverty, it does envision a sacrifice on the part of the debtor." *In re Felske*, 385 B.R. 649, 656 (Bankr. N.D. Ohio 2008).

Accordingly, the court finds that, based on the facts presented at the hearing, granting Debtors relief under Chapter 7 of the Bankruptcy Code would be an abuse of the provisions of that chapter given the totality of his financial circumstances. *See In re Behlke,* 338 F.3d at 437 (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors). Debtors are not needy in the sense of the necessity of relief under Chapter 7 to improve their financial situation at this time, and Debtors have the ability to pay a significant portion of their unsecured debt such that granting them a Chapter 7 discharge would be an abuse of those provisions. Pursuant to *In re Krohn*, the UST has shown not only that Debtors have the ability to repay their creditors with a meaningful distribution through a Chapter 13 plan, but also that Debtors enjoy a stable source of future income and can reduce their expenses through belt tightening without deprivation of reasonable expenses for food, shelter, clothing, and other necessities. *In re Krohn*, 886 F.2d at 126-27.

**THEREFORE**, based on all of the foregoing reasons and authorities, good cause appearing,

**IT IS ORDERED** that Debtors are allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. # 28] will be granted, and this case will be dismissed, by separate order of the court.

###